# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

---

In Re:

**KATHI I. HASSLER,**

**Debtor.**

**Bankruptcy Case
No. 11-40196-JDP**

---

## MEMORANDUM OF DECISION

---

**Appearances:**

Kenneth E. Lyon, Pocatello, Idaho, Attorney for Debtor Kathi I.
Hassler.

David G. Ballard, CAPITOL LAW GROUP, PLLC, Boise, Idaho,
Attorney for Creditor, Young Electric Sign Company.

## Introduction

While Walter Evans ("Evans") and Kathi Hassler ("Hassler") were

married, Young Electric Sign Company ("YESCO") obtained a state court

MEMORANDUM OF DECISION - 1

judgment against Hassler,[1] and recorded that judgment in Bear Lake

County, where the couple owned real property ("the Property").  After

various pre- and post-divorce transfers of her interest in the Property,

Hassler filed for chapter 7[2] bankruptcy protection, and claimed a $100,000

homestead exemption in the Property pursuant to Idaho's homestead

exemption statutes.  Shortly thereafter, Hassler, pursuant to § 522(f),

moved to avoid a judgment lien claimed by YESCO against the Property.

YESCO objected.  The Court considered Hassler's motion at a hearing on

April 26, 2011.  Having now reviewed the record, the parties' submissions,

and applicable law, this Memorandum disposes of Hassler's motion.

Rules 7052, 9014.

**Facts**

Evans and Hassler purchased the Property, located in Montpelier, as

a married couple in November 2009.  Dkt. No. 21-1, Ex. 3.  YESCO

---

[1] At the time, Hassler was known as Kathi Evans.

[2] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 2

recorded a certified copy of a January 2010, $25,484.33 judgment against

Hassler in Bear Lake County, on March 8, 2010.  Dkt. No. 21-1, Ex. 1.

Changes in the couple's relationship regarding the Property soon

followed.  First, Hassler recorded a quitclaim deed conveying any interest

she had in the Property to Evans on November 8, 2010.  Dkt. No. 21-1, Ex.

4.  As a result, when Hassler filed for divorce on December 10, 2010, and a

divorce decree was entered on December 14, 2010, Evans and Hassler

stipulated in state court that they had no community property and the

Property was Evans' separate property.[3]  Dkt. No. 21-2, Ex. 6.

About a month and a half later, Evans and Hassler stipulated to

amend their initial divorce decree.  Dkt. No. 21-2, Ex. 9.  In the January 28,

2011, stipulation, Evans and Hassler now "agreed" the Property was

community property.[4]  *Id.*  Evans then executed a quitclaim deed granting

---

[3] The divorce decree identifies the Property with a description taken from tax records.

[4] Prior to seeking a divorce, Hassler transferred any interest she may have had in the Property to Evans .  Regardless of what the two agreed, Hassler did

(continued...)

MEMORANDUM OF DECISION - 3

"an undivided ½ interest in the Property" to Hassler on February 12, 2011.

Dkt. No. 21-1, Ex. 2.  Throughout this time, Hassler continued to live on

the Property, while, at some point, Evans moved out.[5]

Hassler filed for chapter 7 bankruptcy protection on February 22,

2011.  In her schedules she claimed a $100,000 homestead exemption in the

Property pursuant to Idaho's homestead exemption statutes.  Thereafter,

Hassler filed a motion to avoid YESCO's judgment lien on the Property

pursuant to § 522(f).  Dkt. Nos. 1, 15.  YESCO objected.  Dkt. No. 20.

## Discussion

### I.    YESCO's judgment lien.

Whether Hassler may avoid YESCO's lien pursuant to § 522(f) first

hinges on whether YESCO had a valid judgment lien.  Recording a

certified copy of a judgment creates a judgment lien against all property of

---

[4](...continued)
not have any interest in the Property at the time of divorce that could have been
community property.

[5]  It is unclear from the evidence exactly when Evans moved from the
Property.

MEMORANDUM OF DECISION - 4

the judgment debtor within the county where recorded.  Idaho Code § 10-

1110.  The judgment lien applies to all currently-owned property of the

debtor, and all property thereafter acquired in the county during the lien's

duration.  *Id.*  For later-acquired property, the judgment lien attaches when

title passes.  *See Nixon v. United States*, 289 F. 177, 179 (9th Cir. 1923)

(examining a conveyance of Idaho land, and explaining that, for after-

acquired property, a mortgage lien attaches when title passes); *Towle v.*

*Great Shoshone & Twin Falls Water Power Co.*, 232 F. 733, 738 (D. Idaho 1916)

(finding a lien could attach under a deed of trust's "after acquired

property" clause, and such lien would attach when title passed).

A quitclaim deed passes whatever title and interest a grantor has in

described property when that deed is executed.  *See* Idaho Code § 55-606;

*see also Bateman v. Donovan*, 131 F.2d 759, 763 (9th Cir. 1942), *Luce v. Marble*,

127 P.3d 167, 173 (Idaho 2005).

One limitation on the attachment of judicial liens, however, is that

judgments do not become liens upon property "exempt from execution."

MEMORANDUM OF DECISION - 5

Idaho Code § 10-1110.  In Idaho, real property may be exempt from

execution pursuant to the State's homestead statutes.  *See* Idaho Code § 55-

1003.  Idaho's homestead statutes allow property owners to exempt up to

$100,000[6] of value in their "homestead," which includes "the dwelling

house . . . in which the owner resides or intends to reside . . . ."  Idaho

Code §§ 55-1001(2); 55-1003.

Property owners have two methods to invoke an Idaho homestead

exemption.  *See* Idaho Code § 55-1004(1).  First, property is "automatically

protected by the exemption" if it is (1) occupied as a principal residence (2)

by the owner.  *Id.*  Second, where a homestead exemption does not

automatically arise, a party may invoke a homestead exemption by

recording a "declaration of homestead" in the county where the

homestead is located.  *Id.*

Even where properly established, however, Idaho's homestead

exemption does not protect homesteads in all situations.  *See* Idaho Code

---

[6] If the total net value of a party's homestead is less than $100,000, the homestead exemption is limited to that lesser amount.  Idaho Code § 55-1003.

MEMORANDUM OF DECISION - 6

§ 55-1005.  For instance, a homestead exemption does not protect a

homestead from judgment liens arising prior to the homestead's

establishment.[7]  Idaho Code § 55-1005(1).[8]

Where a homestead exemption arises "automatically," the point

when the exemption is established, in relation to the time any judicial lien

affixes to property, becomes important.[9]  If a party acquires property

-----

[7]  A homestead is established at the same time, and by the same
mechanisms, as a homestead exemption.  *See* Idaho Code § 55-1004; *In re Bailey*,
__ I.B.C.R. __, Bk. No. 10-02884-JDP (Bankr. D. Idaho 2011).

[8]  Idaho Code § 55-1005(1) provides:
> The homestead is subject to execution or forced sale in
> satisfaction of judgments obtained:
> > (1)  Before the homestead was in effect, and which
> > constitute liens upon the premises;

[9]  Unfortunately, Idaho's homestead statutes are not helpful in
determining when an automatic exemption is established in relation to judicial
lien attachment.  The homestead statutes provide "[a homestead is]
automatically protected by the [homestead exemption] from and after the time
the property is occupied as a principal residence by the owner . . . ."  Idaho Code
§ 55-1004(1).  Case law, however, indicates the "automatic" term refers to acts
necessary to invoke an exemption, rather than the timing of an exemption's
establishment.  *See Hopkins v. Cerchione* (*In re Cerchione*), 414 B.R. 540, 547 (9th Cir.
(continued...)

MEMORANDUM OF DECISION - 7

simultaneously with the fixing of a judicial lien, the lien is considered to have attached before the ownership interest arose. *See In re Bailey*, __ I.B.C.R. __, Bk. No. 10-02884-JDP (Bankr. D. Idaho 2011) (citing *Farrey v. Sanderfoot*, 500 U.S. 291, 299–301 (1991)). It follows that, if a party does not have an ownership interest in property before a lien attaches, she would also not have a homestead exemption in that property before the lien attaches. *See* Idaho Code § 55-1004(1) (providing that an automatic homestead exemption arises from the time a property is occupied as a principal residence *by the owner*).

In this case, Hassler and Evans purchased the Property, as a married couple, in November 2009, and resided therein as their principal residence. At that point, the Property was automatically protected by a homestead

---

[9](...continued)
BAP 2009) (quoting Idaho Code § 55-1004's legislative history in a footnote, and explaining that "automatic" simply means a debtor is not required to record a declaration to qualify for an exemption); *In re Koopal*, 226 B.R. 888, 890 (Bankr. D. Idaho 1998) ("The exemption is 'automatic' in that the debtor need not file of record a 'declaration' of homestead in order to gain the benefit of the statute.").

MEMORANDUM OF DECISION - 8

exemption.  YESCO recorded its judgment against Hassler in Bear Lake

County, on March 8, 2010.  The judgment did not attach to the Property as

a judgment lien, however, because the Property was "exempt from

execution" due to Hassler and Evans' homestead exemption.[10]  *See* Idaho

Code § 10-1110.

In early November 2010, Hassler quit-claimed her interest in the

Property to Evans.  Even though she continued occupying the Property as

her principal residence, Hassler no longer owned an interest in the

Property, and, therefore, no longer had the benefit of a homestead

exemption in the Property.  No exemption was needed to protect the

---

[10]  When Hassler filed her petition, she estimated the Property's value at
an undisputed $95,000, subject to a $72,600 security interest.  Dkt. No. 1.  Idaho's
homestead statutes allow property owners to exempt up to $100,000 in
homestead equity.  Idaho Code § 55-1003.  *See also In re Johnson*, 262 B.R. 831, 844
(Bankr. D. Idaho 2001).  After accounting for the security interest, there was
roughly $22,400 in Property equity when Hassler filed.  Unless the Property's
value at some point between March 2010, and November 2010, when Hassler
deeded her interest to Evans, was over $75,000 above the value when Hassler
filed, there was no equity in the Property and Hassler and Evans' homestead
exemption exempted it from execution.  Per Idaho Code § 10-1110, YESCO's
judgment could not attach to the exempt-from-execution Property.

MEMORANDUM OF DECISION - 9

Property in Evans' hands, however, because YESCO's judgment was solely against Hassler.

Hassler and Evans divorced in December 2010, and, at some point, Evans moved from the Property.  In February 2011, Evans recorded a quitclaim deed, transferring title to "an undivided ½ interest in" the Property to Hassler.  As a result, YESCO's lien attached to Hassler's new interest.  At the same time, Hassler again became the Property's owner-occupant, and she was thereafter automatically entitled to a homestead exemption as to her interest in the Property.

However, Hassler's re-acquisition of a Property interest occurred simultaneously with potential attachment of YESCO's lien.  Because those acts occurred simultaneously, Hassler did not have an ownership interest or a homestead exemption in the Property prior to YESCO's lien affixing to the Property, and the Property is subject to that lien.  Idaho Code § 55-1005(1).

## II.    § 522(f) Lien Avoidance.

MEMORANDUM OF DECISION - 10

Even a valid state judgment lien, however, may be avoided under the Bankruptcy Code pursuant to § 522(f)(1)(A).[11] *In re Field*, 05.1 I.B.C.R. 11, 13 (Bankr. D. Idaho 2005). Section 522(f)(1)(A) requires three conditions before a debtor may avoid a lien:

> (1) there was a fixing of a lien on an interest of the debtor in property;
>
> (2) such lien impairs an exemption to which the debtor would have been entitled; and
>
> (3) such lien is a judicial lien.

*In re Ashcraft*, 415 B.R. at 430 (quoting *Culver, LLC v. Chiu* (*In re Chiu*), 304 F.3d 905, 908 (9th Cir. 2002)).

YESCO's lien, which it obtained through recording a judgment in Bear Lake County, is a judicial lien. Idaho Code § 10-1110 (requiring a

---

[11] Section 522(f) of the Code provides:

> (1) Notwithstanding any waiver of exemptions . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>> (A) a judicial lien . . . .

MEMORANDUM OF DECISION - 11

judgment to be recorded for it to "become" a lien upon a debtor's real

property); *see* 11 U.S.C. § 101(36) (defining "judicial lien" as a "lien

obtained by judgment . . . ."); *In re Ashcraft*, 415 B.R. at 435–36 (explaining

that a lien resulting from the recording of a judgment in county real

property records is a judicial lien).  In addition, YESCO's lien impairs an

exemption to which Hassler *would be* entitled, but for the existence of the

lien.  *See* § 522(f)(1)(A); *Owen v. Owen*, 500 U.S. 305, 309–14 (1991); Idaho

Code § 55-1005(1).

YESCO's lien, however, did not affix to an interest of Hassler in the

Property.  To avoid a lien pursuant to § 522(f)(1)(A), a debtor must have

had an interest in property to which the lien affixed *prior to* the lien's

attachment.  *Farrey*, 500 U.S. at 298.  Where a judicial lien attaches

simultaneously with the creation of the debtor's interest in property, that

property interest is not considered to have arisen prior to the lien attaching

to the property.  *See id.* at 299–301.  *See also Weeks v. Pederson (In re*

MEMORANDUM OF DECISION - 12

*Pederson*), 230 B.R. 158, 160–64 (9th Cir. BAP 1999) (discussing both the

*Farrey*-temporal approach to lien attachment and the opposing approach

that views acquisition of property as independent from lien attachment,

and following the temporal approach favored by the Supreme Court in

*Farrey* and *Owen*).  The timing of lien attachment is a state law matter.

*Farrey*, 500 U.S. at 298.  In Idaho, a lien attaches when title to property

passes.  *See Nixon*, 289 F. at 179; *Towle*, 232 F. at 738.

Because Hassler's interest in the Property arose simultaneously with

the fixing of YESCO's lien, Hassler did not have an interest in the Property

prior to the attachment of YESCO's lien.  Under the case law, YESCO's

judgment lien is not avoidable pursuant to § 522(f)(1)(A).

### Conclusion

Hassler obtained an interest in the Property anew post-divorce.

When she obtained that interest, YESCO's judicial lien attached.  Because

those acts occurred simultaneously, YESCO's lien is considered to have

MEMORANDUM OF DECISION - 13

affixed prior to Hassler's ownership interest or homestead exemption

arising, and Hassler's motion to avoid YESCO's lien pursuant to

§ 522(f)(1)(A) must be denied.  A separate order will be entered.

Dated:  May 17, 2011

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 14